# Offender Blue Sheet

Date: 08/13/2007

SBI #: 00449406

Location(s): HRYCI

Name: JOSHUA, C STEPHENSON

Level(s): 0

Race: BLACK

Sex: M

DOB: 03/14/1985

Sex Offender: ☐

AKA:

Offender Type: Detentioner

JOSHUA STEVENSON, JOSHUA STEPHENSON

## Detentioner Charge(s)

| Start Date | CASE# | CRA# | Description | Active | Court | Bail Amount | Disposition | End Date |
|---|---|---|---|---|---|---|---|---|
| 03/19/2007 | 0611022028 | 0611022028 | Assault Third Degree Intentionally or Recklessly Caus | N | U4 | $1,000.00 | Unsecured Bail | 03/19/2007 |
| cm / secured | | | | | | | | |
| 03/19/2007 | 0612010374 | 0612010374 | Terroristic Threatening Threat Commit Crime Death/Sl | Y | SCNC | $2,000.00 | | |
| cm / secured | | | | | | | | |
| 03/19/2007 | 0612010374 | 0612010374 | Ressisting Arrest | Y | SCNC | $500.00 | | |
| cm / secured | | | | | | | | |
| 03/19/2007 | 0612010374 | 0612010374 | Terroristic Threatening Threat Commit Crime Death/Sl | Y | SCNC | $2,000.00 | | |
| cm / secured | | | | | | | | |

Page 1 of 1

---

*Handwritten notes:*

This case is false Imprisionment. Sealed by statute of limmitation 46 I, A8 According ton the (criminal Time frame Procedures).

The other is illegal due to inadiquat medical service and brutality 3 different inn codents or more tech:nlly 3unrelated and the last hap Separate portion of abuse CO708018465

## Request for Legal Photocopies

NOTE: You will receive your copies within a reasonable amount of time. Please read this form and fill it out completely and correctly. PRINT ONLY.

Name: Joshua Stephenson                                Date 7/30/07

Housing Unit: 1 E #20

**Type of Document(s)** (Max of five)                 **Numbers of**          **Envelopes Needed**
                                                       **Copies**

46 I

48 Delaware Superior Court                            ____                    White: ____

Rules                                                 ____                    Yellow: ____

____

I have a deadline, my pleadings must be in court by:

**Stapled**              **Double Sided**      (Will be verified) **Date:** _____ **Case#:** _____

**Your request can not be honored for the following reasons :**

☐   The material submitted is not legal work.                    ☐   The citation you have submitted is incomlete.
☐   Grievances, letters, status sheets, etc. are not legal work.  ☐   There is a .25 per page per side charge for your
☐   Your request is excessive, five (5) case per week maximum.       item(s) submitted for copying.
    We do not have the material you have requested.

1 E   @ 2/1



## DELAWARE PSYCHIATRIC CENTER
### Grievance Form

NAME: J.S.                                          DATE: 3/24/08

UNIT: _____                      ATTENDING PSYCHIATRIST: _____

In the space below, please write your complaint or grievance. (Use additional pages if necessary.)
If you need help In completing this form – Unit Staff, the Patient Advocate (255-2775), or the
Director of Consumer Affairs (255-9421) will assist you. Give the completed form to unit staff or a
member of your Treatment Team.

I being deprived of my right to vote.
And all other things under Statues 46, 48.

Patient/Family Signature: _____          Date: _____

Received By: _____                       Date: _____

---

DIRECTIONS FOR UNIT DIRECTOR/DESIGNEE:
Make a copy of this signed/dated Grievance Form for the patient or family. Fax a copy of the form to the Performance
Improvement Dept. (255-4418) IMMEDIATELY, prior to the start of the investigation.

2

GRIEVANCE RESOLUTION PROCESS FOR PATIENTS AND FAMILIES

## DELAWARE PSYCHIATRIC CENTER
### Grievance Form

NAME: _____    DATE: 3/26/08

UNIT: _____    ATTENDING PSYCHIATRIST: _____

In the space below, please write your complaint or grievance. (Use additional pages if necessary.) If you need help in completing this form – Unit Staff, the Patient Advocate (255-2775), or the Director of Consumer Affairs (255-9421) will assist you. Give the completed form to unit staff or a member of your Treatment Team.

Boiling

( Administrative order?)

Patient/Family Signature: _____    Date: _____

Received By: _____    Date: _____

**DIRECTIONS FOR UNIT DIRECTOR/DESIGNEE:**
Make a copy of this signed/dated Grievance Form for the patient or family. Fax a copy of the form to the Performance Improvement Dept. (255-4418) IMMEDIATELY, prior to the start of the investigation.

DELAWARE PSYCHIATRIC CENTER
Grievance Form

NAME: _____    DATE: _____

UNIT: _____    ATTENDING PSYCHIATRIST: _____

In the space below, please write your complaint or grievance. (Use additional pages if necessary.) If you need help in completing this form – Unit Staff, the Patient Advocate (255-2775), or the Director of Consumer Affairs (255-9421) will assist you. Give the completed form to unit staff or a member of your Treatment Team.

45-60days

Crimminal Rules (46, 48)... EtC

... Cheif Justice Rules ("120 days")

Ineffective Council
John Edinger - Kath Bungler
has not only conflict
with intrest, but
has been non compli-
ant with the position
of motion.

## DELAWARE PSYCHIATRIC CENTER
### Grievance Form

NAME: _JS_ DATE: _____

UNIT: _____ ATTENDING PSYCHIATRIST: _____

In the space below, please write your complaint or grievance. (Use additional pages if necessary.) If you need help in completing this form – Unit Staff, the Patient Advocate (255-2775), or the Director of Consumer Affairs (255-9421) will assist you. Give the completed form to unit staff or a member of your Treatment Team.

Part of my pain and suffering from this unecessary dely or depile (Tria'/indictment) in cludes the barrasment of Lt. MicMillian in wich I was deprived of a witness for my hearing on incodent.

- The process of ailenated substance being forced into my body with out consent or education on side effect or purpouse of use

Date: _____

*in regaurds to missing - duplicat*



**DELAWARE PSYCHIATRIC CENTER**
**Grievance Form**

NAME: Joshua Stephenson                    DATE: 7/18/08

UNIT: _____    ATTENDING PSYCHIATRIST: Mr Dr Earl Thompson

In the space below, please write your complaint or grievance. (Use additional pages if necessary.)
If you need help in completing this form – Unit Staff, the Patient Advocate (255-2775), or the
Director of Consumer Affairs (255-9421) will assist you. Give the completed form to unit staff or a
member of your Treatment Team *Mr Dr Earl Thompson treatment plan oppess*
*Delibratly*

*"(Crimminal Rules")* continually,

$4c+48 =$ discharge planning,
emasipation, etc.

Patient/Family Signature: _____    Date: _____

Received By: _Quella sleeper_    Date: 2/18/08

**DIRECTIONS FOR UNIT DIRECTOR/DESIGNEE:**
Make a copy of this signed/dated Grievance Form for the patient or family. Fax a copy of the form to the Performance
Improvement Dept. (255-4418) IMMEDIATELY, prior to the start of the investigation.

## DELAWARE PSYCHIATRIC CENTER
### Grievance Form

NAME: Joshua Stephenson          DATE: 2/18/08

UNIT: _____          ATTENDING PSYCHIATRIST: Mr Dr Earl Thompson

In the space below, please write your complaint or grievance. (Use additional pages if necessary.)
If you need help in completing this form – Unit Staff, the Patient Advocate (255-2775), or the
Director of Consumer Affairs (255-9421) will assist you. Give the completed form to unit staff or a
member of your Treatment Team. The following has been over looked
in defying of Crimminal Rules and Bills of rights (46/8).

||

( S.O.P.'S ) ?

" ( Infringment ) " Southside February 15, 2008

taff: " Those who control their tounge will have a long life;
Opening your mouth can ruin everthing. "

oly Bible: He who gaurds his mouth preserves his life —Proverbs 13:3
But he who opens wide his lips shall have
destruction
——— (King James Vers
Moregon Back —

Patient/Family Signature: _____          Date: _____

Received By: _____          Date: 2-18-08

DIRECTIONS FOR UNIT DIRECTOR/DESIGNEE:
Make a copy of this signed/dated Grievance Form for the patient or family. Fax a copy of the form to the Performance
Improvement Dept. (255-4418) IMMEDIATELY, prior to the start of the investigation.

2

I pass the first
Evaluation, etc ...
Then why am I being deprived
of discharge? etc.

" (dignity and respect) "

food concerns, water cycle, yelling
at patients, discarding grievence, etc.

" (right to see visitors) "

I've been experiencing difficulty
with documented visits or names that I put
on visitors list.

" (right to keep things that belongs to you)

Cash-up front, food, etc. As long
as it is safe for you to do so.

Unconsentual ~~of a~~ surgical opera-
tion of a needle (breaking
the skin) and unecessary
force during restraint
and after restraint. Mr Green,
mr kelson-Treatment Team in
general

## U.S. CONSTITUTION

**1775**

The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

**Section 4.** The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

### Article V

The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate.

### Article VI

All Debts contracted and Engagements entered into, before the Adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation.

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.

### Article VII

The Ratification of the Conventions of nine States, shall be sufficient for the Establishment of this Constitution between the States so ratifying the Same.

ARTICLES IN ADDITION TO, AND AMENDMENT OF, THE CONSTITUTION OF THE UNITED STATES OF AMERICA, PROPOSED BY CONGRESS, AND RATIFIED BY THE LEGISLATURES OF THE SEVERAL STATES PURSUANT TO THE FIFTH ARTICLE OF THE ORIGINAL CONSTITUTION.

### Amendment I [1791]

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; on

the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

### Amendment II [1791]

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

### Amendment III [1791]

No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

### Amendment IV [1791]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

### Amendment V [1791]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use. without just compensation.

### Amendment VI [1791]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

### Amendment VII [1791]

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

### Amendment VIII [1791]

 Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

### Amendment IX [1791]

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

## Amendment X [1791]

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

## Amendment XI [1798]

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

## Amendment XII [1804]

The Electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;—The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;—The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice. And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President.—The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States.

## Amendment XIII [1865]

**Section 1.** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

**Section 2.** Congress shall have power to enforce this article by appropriate legislation.

### Amendment XIV [1868]

**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Section 2.** Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**Section 3.** No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

**Section 4.** The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

**Section 5.** The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

### Amendment XV [1870]

**Section 1.** The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

**Section 2.** The Congress shall have power to enforce this article by appropriate legislation.

### Amendment XVI [1913]

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

Westlaw.

842 A.2d 650

Page 1

842 A.2d 650
**(Cite as: 842 A.2d 650)**

## H

Gutierrez v. State
Del.Supr.,2004.

Supreme Court of Delaware.
Carlos GUTIERREZ, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 126,2003.**

Submitted: Aug. 5, 2003.
Decided: Sept. 25, 2003.
Reissued: Feb. 25, 2004 FN1.

FN1. This Opinion is being substituted for
the Order of this Court issued September
26, 2003, *Gutierrez v. State,* No. 126, 2003
(Del. Sept. 26, 2003) (ORDER).

**Background:** Defendant was convicted in the Su-
perior Court, New Castle County, of third-degree
assault, and he appealed.

**Holding:** The Supreme Court, Veasey, C.J., held
that defendant's testimony that he punched correc-
tional officer only after officer stabbed his hand
would, if believed, show that officer threatened to
use unlawful force, and thus defendant was entitled
to jury instruction on self-defense.

Reversed.
West Headnotes
**[1] Criminal Law 110 ☜1139**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110k1139 k. Additional Proofs and Trial
De Novo. Most Cited Cases
Supreme Court reviews de novo the Superior
Court's denial of a requested jury instruction.

**[2] Criminal Law 110 ☜772(6)**

110 Criminal Law
    110XX Trial

        110XX(G) Instructions: Necessity, Requis-
ites, and Sufficiency
            110k772 Elements and Incidents of Of-
fense, and Defenses in General
                110k772(6) k. Defenses in General.
Most Cited Cases
The evidence presented by a defendant seeking a
self-defense instruction is "credible," for purposes
of statute prohibiting consideration of a defense by
the jury unless the trial court is satisfied that some
"credible" evidence supporting the defense has
been presented, if the defendant's rendition of
events, if taken as true, would entitle him to the in-
struction. 11 Del.C. §§ 303(a), 464(a).

**[3] Criminal Law 110 ☜772(6)**

110 Criminal Law
    110XX Trial
        110XX(G) Instructions: Necessity, Requis-
ites, and Sufficiency
            110k772 Elements and Incidents of Of-
fense, and Defenses in General
                110k772(6) k. Defenses in General.
Most Cited Cases
In determining whether jury instruction on self-
defense should be given, as arbiter of the law, the
judge should consider the evidence and determine
whether, if the jury believes it, the evidence could
support the legal conclusion that the defendant ac-
ted in self-defense; if so, the judge should submit
the evidence to the jury, with a self-defense instruc-
tion, to act as the fact finder and decide which evid-
ence should be believed. 11 Del.C. §§ 303(a),
464(a).

**[4] Criminal Law 110 ☜772(6)**

110 Criminal Law
    110XX Trial
        110XX(G) Instructions: Necessity, Requis-
ites, and Sufficiency
            110k772 Elements and Incidents of Of-
fense, and Defenses in General
                110k772(6) k. Defenses in General.

## Most Cited Cases

Judge's role in determining whether evidence warrants jury instruction on a defense and jury's role to determine whether evidence should be believed does not contravene statute prohibiting consideration of a defense by jury unless trial court is satisfied that some "credible" evidence supporting the defense has been presented. 11 Del.C. § 303(a).

## [5] Assault and Battery 37 ☞96(3)

37 Assault and Battery
    37II Criminal Responsibility
        37II(B) Prosecution
            37k93 Trial
                37k96 Instructions
                    37k96(3) k. Self-Defense. Most

Cited Cases

Defendant's testimony that he punched correctional officer only after officer stabbed his hand with pen would, if believed, show that officer threatened to use unlawful force, and thus defendant was entitled in assault trial to jury instruction on self-defense. 11 Del.C. § 464(a).

**\*651** Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr.A. No. IN-02-08-1521.

Upon appeal from the Superior Court. **REVERSED**.

Robert M. Goff, Jr., Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.
John Williams, Esquire, Department of Justice, Dover, Delaware, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

VEASEY, Chief Justice.

In this appeal we consider the quantum of evidence that is sufficient to require that a trial court grant a defendant's request for a jury instruction on self-defense. We conclude that a defendant has submitted sufficient evidence to satisfy the credible evidence threshold for a self-defense instruction if the defendant's rendition of events, if taken as true, would entitle him to the instruction. Therefore, we reverse the Superior Court's judgment.

## *Facts*

On May 16, 2002, a correctional officer escorted Carlos Gutierrez, an inmate at the Delaware Department of Correction, to an interview room for a preliminary hearing on an alleged disciplinary violation. Correctional officer Lieutenant Seacord conducted the hearing. According to the State, when Seacord confronted Gutierrez with the institutional disciplinary charge against him, Gutierrez became agitated, balled up the disciplinary "writeup" sheet, and threw the paper on the floor. As Seacord attempted to pick up the paper, Gutierrez punched Seacord several times. Three correctional officers standing outside the office witnessed the altercation and rushed into the office to restrain Gutierrez. Seacord sustained injuries, including a fractured rib.

Gutierrez was indicted for Assault in a Detention Facility.[FN2] At trial, Gutierrez testified that he punched Seacord only after Seacord stabbed Gutierrez' hand with a pen. The three other correctional officers who witnessed the assault did not see Seacord stab Gutierrez. Gutierrez was sent to a physician assistant at the correctional facility shortly after the assault, and the physician assistant testified that Gutierrez did not sustain any injury to his hands. Following the jury trial, he was convicted of the lesser-included offense of Assault Third Degree.[FN3] He was sentenced to six months' imprisonment at Level V to be served consecutively to the life sentence he has been serving since 1985. Gutierrez appeals from the judgment of conviction.

> FN2. Del. Code Ann. tit. 11, § 1254 (2001).

> FN3. *Id.* § 611.

## *Issue on Appeal*

[1] In the Superior Court, Gutierrez requested a jury instruction for a justification defense. Given the conflicting testimony of the other eyewitnesses and the physician assistant, the trial court denied the request for the instruction, holding that Gutierrez had not presented "credible" evidence to sup-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

port his theory of self-defense. Gutierrez challenges the Superior Court's denial of his request for the justification instruction. This Court reviews de novo the Superior Court's denial of a requested jury instruction.[FN4]

> FN4. *Lunnon v. State,* 710 A.2d 197, 199 (Del.1998).

#### *Merits*

This case concerns the quantum of evidence sufficient to warrant a jury instruction*652 on self-defense. Gutierrez was entitled to such an instruction if he could have proven that his use of force was justified because he believed the "force [was] immediately necessary for the purpose of protecting [himself] against the use of unlawful force" by Seacord.[FN5] Gutierrez could introduce this defense to the jury only if "the court [was] satisfied that some credible evidence supporting the defense has been presented."[FN6]

FN5. Del. Code Ann. tit. 11, § 464(a).

FN6. *Id.* § 303(a).

Because Gutierrez' testimony was not corroborated by other evidence in the record and conflicted with the testimony of all the other witnesses, the State contends that the trial court properly rejected the defense as not supported by "credible evidence." The State relies on this Court's decision in *Curry v. State,*[FN7] in which the Court held that a defendant did not present sufficient evidence to support a self-defense instruction in a first-degree robbery case. In *Curry,* the defendant bit the victim after the victim caught the defendant stealing tools from the victim's van. When the victim caught the robber attempting to steal the tools, the victim knocked the robber to the ground and held his arms around the robber's chest. The robber contended at trial that he could not breathe because the victim's arms covered his mouth. Thus, the robber argued, he was justified in biting the victim and requested a jury instruction on self-defense. This Court held that the victim's alleged conduct did not present a threat of "deadly force" that was necessary for the requested jury in-

struction.[FN8] Even assuming the victim placed his elbows over the defendant's mouth, the ten seconds of purported "suffocation" did not constitute a credible threat of deadly foree.[FN9]

> FN7. No. 445, 1996, 1997 WL 664689, 1997 Del. LEXIS 370 (Del. Oct. 22, 1997) (ORDER).

> FN8. *Id.* at *1, 1997 Del. LEXIS at *2-3.

> FN9. *Id.* at *1, 1997 Del. LEXIS at *4.

[2] Gutierrez' claim differs from the requested instruction in *Curry* because if Gutierrez' version of the facts is true, he was entitled to a self-defense instruction. We hold that the evidence presented by a defendant seeking a self-defense instruction is "credible" for purposes of Title 11, Section 303(a) if the defendant's rendition of events, *if taken as true,* would entitle him to the instruction.

[3] Our holding recognizes the differing roles of judge and jury in a jury trial. As arbiter of the law, the judge should consider the evidence and determine whether, if the jury believes it, the evidence could support the legal conclusion that the defendant acted in self-defense.[FN10] In other words, and in the context of this case, the judge would determine whether Gutierrez' evidence that Seacord stabbed him with a pen described a scenario in which Gutierrez would have been justified in using force to defend himself. If it did, the judge should submit the evidence to the jury, with a self-defense instruction, to act as the fact finder and decide which evidence should be believed.[FN11]

> FN10. *Cf. Capital Mgmt. Co. v. Brown,* 813 A.2d 1094, 1099 (Del.2002) (noting that Article IV, Section 19 of the Delaware Constitution was adopted "to ensure that judges confined themselves to making determinations of law and leaving juries to determine the facts").

> FN11. *See Eaton v. State,* No. 300, 1999, 2000 WL 628330, 2000 Del. LEXIS 179 (Del. Apr. 28, 2000) (ORDER) ("[I]t is the

Page 4

> role of the jury, not the trial judge, to assess witness credibility.").

**\*653** [4] This distribution of authority between the judge and the jury does not contravene Section 303(a). "Credible" can be defined as "*[c]apable* of being believed." FN12 Under this definition, the judge's role as gate keeper is to ensure (1) that the affirmative defense evidence describes a situation that is within the realm of possibility, and (2) that such situation would legally satisfy the requirements of self-defense. Once the judge determines that the evidence is "credible" in the sense of being possible, he or she should submit to the jury the question of which version of the facts is more believable and supported by the evidence as a whole.

> FN12. The Random House Dictionary of the English Language 341 (unabridged ed.1966) (emphasis added).

Appellate courts in other jurisdictions have similarly held that a credible evidence standard required a jury instruction on an affirmative defense even where the defendant's affirmative defense evidence was not very believable. For example, in *People v. Garcia* the Colorado Court of Appeals held: "If there is credible evidence supporting an affirmative defense, the court must instruct the jury on the defense even if the supporting evidence consists of highly improbable testimony by the defendant." FN13 Similarly, the Supreme Court of Mississippi has held that in deciding whether a defendant has presented credible evidence of self-defense the judge must view the evidence in the light most favorable to the defendant:

> FN13. 1 P.3d 214, 221 (Colo.Ct.App.1999) (citing *Lybarger v. People*, 807 P.2d 570, 579 (Colo.1991)). A Colorado statute requires the defendant to present "some credible evidence" in order to create the issue of an affirmative defense. *See People v. Hill*, 934 P.2d 821, 826 (Colo.1997). The Illinois Supreme Court has stated a similar standard for the quantum of evidence that will support a self-defense instruction. *See*

*People v. Everette*, 141 Ill.2d 147, 152 Ill.Dec. 377, 565 N.E.2d 1295, 1299 (Ill.1990) (observing that "a homicide defendant is entitled to an instruction on self-defense where there is some evidence in the record which, *if believed by a jury*, would support the defense" (emphasis added)).

[W]hether the self-defense issue-or any other issue of fact-should be submitted to the jury ultimately turns on whether there is in the record credible evidence supporting it. Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party of right is entitled to have the court instruct the jury on that issue and through this means submit the issue to the jury for decision. The instruction may be denied only if the trial court can say, *taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences that may be drawn from the evidence in favor of the accused,* that no hypothetical reasonable jury could find the fact as the accused suggests. FN14

> FN14. *Anderson v. State*, 571 So.2d 961, 964 (Miss.1990) (emphasis added).

[5] Gutierrez was entitled to the self-defense instruction. He was not required to prove that the alleged stabbing constituted a threat of "deadly force." He was entitled to receive a self-defense instruction if the corrections officer threatened to use "unlawful force." FN15 Gutierrez' testimony presented a plausible version of the events, and if taken as true entitled him to a self-defense instruction. Whether Gutierrez' version of the facts was more credible**\*654** than the other evidence presented should have been determined by the jury.

> FN15. *See* Del. Code Ann. tit. 11, § 464(a) ("The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occa-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

842 A.2d 650
842 A.2d 650
**(Cite as: 842 A.2d 650)**

Page 5

sion.").

*Conclusion*

Accordingly, the judgment of the Superior Court is
REVERSED.

Del.Supr.,2004.
Gutierrez v. State
842 A.2d 650

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**C**

Washington v. State
Del.Supr.,2003.

Supreme Court of Delaware.
Christian K. WASHINGTON, Defendant Below,
Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 694,2002.**

Submitted: Sept. 3, 2003.
Decided: Nov. 3, 2003.

Defendant was convicted in the Superior Court,
New Castle County, of two counts of first degree
robbery and two counts of possession of a firearm
during the commission of a felony. Defendant ap-
pealed. The Supreme Court, Veasey C.J., held that
defendant's convictions were not multiplicitous, so
as to constitute double jeopardy, on the ground that
they related to a single course of criminal conduct.

Affirmed.
West Headnotes
**[1] Criminal Law 110 €══1139**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110k1139 k. Additional Proofs and Trial
De Novo. Most Cited Cases
The Supreme Court reviews de novo a claim of in-
fringement of constitutional rights.

**[2] Double Jeopardy 135H €══1**

135H Double Jeopardy
    135HI In General
        135Hk1 k. In General. Most Cited Cases
The constitutional principle of "double jeopardy"
protects a defendant against (1) successive prosecu-
tions; (2) multiple charges under separate statutes
requiring proof of the same factual elements; and
(3) multiple charges under the same statute.
U.S.C.A. Const.Amend. 5.

**[3] Double Jeopardy 135H €══132.1**

135H Double Jeopardy
    135HV Offenses, Elements, and Issues Fore-
closed
        135HV(A) In General
            135Hk132 Identity of Offenses; Same Of-
fense
                135Hk132.1 k. In General. Most Cited
Cases
Under the third type of double jeopardy protection,
known as the "multiplicity doctrine," dividing one
offense into multiple counts of an indictment viol-
ates a defendant's right against double jeopardy,
which may occur when prosecutors manufacture
additional counts of a particular crime by the
simple expedient of dividing a single crime into a
series of temporal or spatial units. U.S.C.A.
Const.Amend. 5.

**[4] Double Jeopardy 135H €══145**

135H Double Jeopardy
    135HV Offenses, Elements, and Issues Fore-
closed
        135HV(A) In General
            135Hk139 Particular Offenses, Identity of
                135Hk145 k. Robbery. Most Cited
Cases
Convictions for first degree robbery and possession
of a firearm during commission of a felony, which
arose from defendant's conduct in taking victim's
silver chain, telling victim to leave and, then, taking
victim's car keys after defendant changed his mind,
were separate, distinct acts connected with separate
intents to commit each crime, rather than constitute
a single, continuous act, and thus, the convictions
did not violate double jeopardy. U.S.C.A.
Const.Amend. 5; 11 Del.C. § 832.

**[5] Arson 36 €══12**

36 Arson
    36k12 k. Degrees. Most Cited Cases
Arson is primarily a property crime, with first de-
gree arson increasing the severity of the charges

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2

and punishment because of the arsonist's creating a general risk to human life.

**[6] Robbery 342 ⬛══6**

342 Robbery
    342k6 k. Force. Most Cited Cases

**Robbery 342 ⬛══7**

342 Robbery
    342k7 k. Putting in Fear. Most Cited Cases
Robbery is primarily a crime of physical violence against a person; although robbery involves the taking of property, the legislature's concern in enacting the robbery statute was with violence and intimidation. 11 Del.C. §§ 831, 832.

**[7] Double Jeopardy 135H ⬛══132.1**

135H Double Jeopardy
    135HV Offenses, Elements, and Issues Foreclosed
        135HV(A) In General
            135Hk132 Identity of Offenses; Same Offense
                135Hk132.1 k. In General. Most Cited Cases
Courts consider whether a defendant formed separate intents to commit the acts for which he was convicted, in determining whether double jeopardy was violated. U.S.C.A. Const.Amend. 5.

**[8] Criminal Law 110 ⬛══291**

110 Criminal Law
    110XV Pleas
        110k289 Plea of Former Jeopardy or Former Acquittal or Conviction
            110k291 k. Time and Order of Pleading. Most Cited Cases
Better practice for defense counsel, than asserting violation of a defendant's double jeopardy rights in a post-trial motion, is for counsel to raise such contentions in a motion before the case is submitted to the jury; if the trial judge makes an independent determination that sufficient evidence has been submitted to support separate convictions, defense

counsel can ask for a jury instruction on those factual issues or the trial judge may sua sponte decide to give such an instruction. U.S.C.A. Const.Amend. 5.

**[9] Double Jeopardy 135H ⬛══145**

135H Double Jeopardy
    135HV Offenses, Elements, and Issues Foreclosed
        135HV(A) In General
            135Hk139 Particular Offenses, Identity of
                135Hk145 k. Robbery. Most Cited Cases
Defendant's conviction for two counts of possession of a firearm during commission of a felony did not violate double jeopardy, where defendant was properly convicted of two counts of first degree robbery, during which he possessed a firearm. U.S.C.A. Const.Amend. 5; 11 Del.C. § 832.

**\*486** Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr. ID. No. 0104011899.

Upon appeal from the Superior Court. **AFFIRMED**.

Edmund M. Hillis, Office of the Public Defender, Wilmington, for Appellant.

John Williams, Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, HOLLAND, BER-GER, STEELE and JACOBS, Justices, constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal we consider whether a defendant's convictions for two counts of first degree robbery and two counts of possession of a firearm during the commission of a felony were multiplicitous and therefore constituted double jeopardy on the ground that they related to a single course of criminal conduct. Although the defendant's actions were in close proximity temporally and spatially, we have determined on this record that the defendant engaged in separate, distinct acts and formed separate intents to commit each crime. Because the defendant's actions did not constitute a single, continuous course

of conduct, principles of multiplicity and double jeopardy are not implicated. Therefore, we affirm the judgment of the Superior Court.

## Facts

On the evening of April 18, 2001, the victim, Jamal Miller, decided to visit a friend, Latisha Seals. Miller drove to Seals' house, parked his car near the house, and knocked on the door. When an unidentified female answered the door, Miller observed Seals and the defendant, Christian Washington, descending the steps with a pit bull dog. Seals had a cast on her arm. When Miller asked what had happened, Washington pushed Seals back and stepped outside, questioning Miller about why he had come to the house. Miller replied that he had come to visit Seals. Washington then pulled out a gun, holding it within a few inches of Miller's face. Miller backed away and pleaded with Washington not to shoot him. Washington repeatedly told Miller to leave, which Miller attempted to do, but Washington's dog pursued him each time he moved away.

Washington continued pointing his gun at Miller. When Miller was approximately twenty to forty feet away from Seals' house, Washington demanded that Miller give him a silver chain that Miller had around his neck. Miller complied. Washington donned the chain and then again *487 ordered Miller to leave. Miller again tried to flee, but each time he did, Washington's dog pursued him. Washington then commanded the dog to "hit" Miller, and the dog latched onto Miller's leather jacket. Still holding the gun near Miller's face, Washington ordered Miller to give him the jacket. Miller complied. Washington again told Miller to leave. When Miller attempted to run to his car, Washington demanded that Miller give him the keys to the car. By this time, Washington and Miller were approximately fifty or sixty feet from where Washington had taken Miller's silver chain. Approximately ten or twenty seconds had passed since Washington had taken Miller's jacket.

Washington was indicted on two counts of Robbery

First Degree. Count I was for taking Miller's chain and Count III was for taking the keys. Washington was also indicted on two counts (Counts II and IV) of Possession of a Firearm During the Commission of a Felony in connection with the two robbery charges. Before trial, Washington filed a motion to dismiss Counts III and IV because they duplicated Counts I and II and therefore violated Washington's right against double jeopardy. The Superior Court denied the motion. A jury convicted Washington of Counts I through IV, and he received the minimum mandatory sentence for each count, to be served consecutively.

## Issue on Appeal

[1] Washington argues that the second count of Robbery First Degree and the second count of Possession of a Firearm During the Commission of a Felony (and the minimum mandatory sentences imposed for each) are multiple charges for the same offense and are therefore multiplicitous and violate the Double Jeopardy Clause of the United States and Delaware Constitutions. <sup>FN1</sup> He contends that his actions constituted one continuous course of criminal conduct because they occurred in close spatial and temporal proximity to one another and because the crime involved only one victim, one weapon, and one perpetrator. This Court reviews de novo a claim of infringement of constitutional rights.<sup>FN2</sup>

> FN1. See U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...."); Del. Const., art. 1, § 8 ("[N]o person shall be for the same offense twice put in jeopardy of life or limb....").

> FN2. Williamson v. State, 707 A.2d 350, 362 (Del.1998).

## Multiplicity and Double Jeopardy

We reject Washington's claim that his actions constituted a single course of criminal conduct. His acts were sufficiently separated in location and time to constitute distinct acts. Moreover, he formed dis-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tinct intents to take each different item of property. We therefore hold that Washington's acts may be treated as separate and distinct crimes. Accordingly, his convictions and sentencing did not violate his constitutional rights.

[2][3] The constitutional principle of double jeopardy protects a defendant against (1) successive prosecutions; (2) multiple charges under separate statutes requiring proof of the same factual elements; and (3) multiple charges under the same statute.[FN3] Washington's claim relates to the third type of protection, known as the "multiplicity" doctrine. Dividing one offense into multiple counts of an indictment violates a defendant's right against double jeopardy.[FN4] This may occur when **488 "[p]rosecutors ... manufacture additional counts of a particular crime by the 'simple expedient of dividing a single crime into a series of temporal or spatial units.' "[FN5] Washington contends that his convictions and sentencing implicate the multiplicity doctrine because his conduct constituted a single, continuous act for which he may properly be convicted only once.

> FN3. *Williams v. State.* 796 A.2d 1281, 1285 (Del.2002).

> FN4. *Feddiman v. State.* 558 A.2d 278, 288 (Del.1989).

> FN5. *Handy v. State.* 803 A.2d 937, 940 (Del.2002).

### First Degree Robbery

[4] Washington's argument that his conduct constituted a single, continuous act fails because he made distinct threats, separated in both time and space, against Miller, each intended to compel Miller to surrender different items of property. In addition, the record indicates that Washington formed the intent to take Miller's car keys separately from forming the intent to take Miller's silver chain.[FN6] The separation in time and space were small, but when considered along with the evidence indicating Washington's formation of a distinct intent, they are sufficient to support multiple convictions without

implicating the multiplicity doctrine.

> FN6. *See Williams.* 796 A.2d at 1286-87 (considering separation in time and space and the formation of distinct intents as factors in determining whether a defendant has committed two violations of the same statute).

In *State v. Roderick,*[FN7] the defendant challenged his conviction for two counts of robbery in connection with a robbery of a Radio Shack store. The State had charged the defendant with robbery of the store and robbery of the store's salesclerk. The defendant contended that the charges were multiplicitous because the robbery constituted a single, continuous criminal act.[FN8] The Superior Court held that the two charges were for separate offenses because the robber separately threatened the clerk to compel him to deliver the store's property and the clerk's own property. Similarly, Washington ordered Miller to turn over his keys after Miller had already relinquished his silver chain.

> FN7. No. IN-82-03-1964, 1982 WL 593179, at *1 1982 Del.Super. Lexis 1098, at *1 (Del.Super.Ct. Nov. 30, 1982).

> FN8. *Id.* at *1, 1982 Del.Super. Lexis 1098, at *1-2. The court noted the special importance of a correct resolution of the issue because of the mandatory minimum sentence imposed for first degree robbery. *Id.* at *1, 1982 Del.Super. Lexis 1098, at *3.

In *Wyant v. State,*[FN9] this Court upheld a defendant's conviction for two counts of rape and one count of attempted rape where the sexual acts were committed against a single victim within a single residence and a relatively short time period. While on the first floor of the residence, the defendant attempted to rape the victim by anal intercourse and then raped her vaginally.[FN10] The defendant then forced the victim upstairs, where he forced her to have sexual intercourse with him again.[FN11] The Court rejected the defendant's argument that his actions constituted one continuous criminal act.[FN12]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Considering the \*489 timing and physical movement of the victim between the sexual acts, the Court held that the defendant properly could be convicted of both attempted rape and rape.<sup>FN13</sup> As in the present case, the facts in *Wyant* do not indicate any significant passage of time between the separate acts other than the time required to move from one area of the home to another. In addition, the spatial distance in *Wyant* was only that space separating the second floor from the first floor of the same residence. Here, Washington and Miller had moved approximately fifty or sixty feet from where Washington took Miller's chain to where he took the car keys.

FN9. 519 A.2d 649 (Del.1986).

FN10. *Id.* at 652.

FN11. *Id.*

FN12. The defendant did not argue that the multiple convictions and sentences violated any constitutional right. Instead, he asserted that they violated Del. Code Ann. tit. 11, § 206(a)(2), which prohibits conviction for a lesser included offense or an attempt to commit an offense if the defendant is convicted of the completed offense. *Wyant,* 519 A.2d at 661. In *Feddiman v. State,* 558 A.2d 278, 288 (Del.1989), however, this Court upheld the defendant's convictions for eight counts of unlawful sexual intercourse in the first degree as not violating the multiplicity doctrine. The defendant kidnapped his victim and then raped her in various places throughout Sussex County over the course of approximately six hours. *Id.* at 280-81. The Court upheld the convictions as not multiplicitous because

"[a] person who commits multiple sexual assaults upon the same victim may be held responsible for, and punished for, each separate and distinct act," albeit a violation of the same statute. One is not allowed to "take advantage of the fact that he has

already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim."

*Id.* at 289 (citation omitted). The Court considered the timing and physical movement between the sexual acts and decided that the defendant's actions constituted separate violations of the statute for which he properly could be convicted. *Id.*

FN13. *Wyant,* 519 A.2d at 661.

In addition to Washington's making distinct, spatially and temporally separated threats to Miller, the evidence indicates that he formed the intent to take Miller's keys after he had already taken the chain and the leather jacket. After Washington took Miller's jacket, he told Miller to leave. As Miller started to run toward his car, Washington said "No. F\* \* \* that. Give me your keys." This statement, immediately following an order for Miller to leave, indicates that Washington changed his mind and then formed, for the first time, an intent to take Miller's keys.

In *Williams v. State,*<sup>FN14</sup> this Court held that the multiplicity doctrine barred a defendant's conviction for two counts of possession of cocaine with intent to deliver drugs that were found in his car near his apartment and drugs that were found in his apartment. The Court based its decision on several factors: (1) all the drugs were discovered during the same police confrontation, (2) all the drugs were found in the same general location, and (3) Williams " 'displayed only a single intent and goal-distribution.' "<sup>FN15</sup> One scheme to distribute drugs may be complex and may occur over an extended period of time but still involve only one intent to distribute. In the present case, however, the evidence indicates that Washington had completed one robbery-the taking of the silver chain-before he formed a separate intent to take the car keys.<sup>FN16</sup> The separate convictions for two counts of robbery

are therefore proper.

FN14. 796 A.2d 1281 (Del.2002).

FN15. *Id.* at 1286-87 (quoting *Rashad v. Burt*, 108 F.3d 677, 681 (6th Cir.1997)).

FN16. For some reason, Washington was not charged with robbery of Miller's jacket.

[5] Robbery is a violent crime against the person of the victim. Therefore, the multiplicity doctrine implications applicable to robbery are more akin to those arising in sexual assault cases than in cases involving property-oriented crimes. In a recent arson case, this Court held that multiple convictions relating to the same course of conduct violated the multiplicity doctrine because arson, as defined by the General Assembly, is primarily a crime *490 against property.$\frac{FN17}{}$ The State charged the defendant with two counts of arson because the defendant had known when he set a single fire in a mobile home that two other people were inside.FN18 The Court analyzed the legislative purpose underlying the arson statute and decided that the General Assembly had intended that arson would be a "single crime regardless of how many human victims it threatens or claims." $\frac{FN19}{}$ Thus, arson is primarily a property crime, with first degree arson increasing the severity of the charges and punishment because of the arsonist's creating a general risk to human life.$\frac{FN20}{}$

> FN17. *Handy v. State*, 803 A.2d 937, 939 (Del.2002). The Court stated:
>
> Because the basis of the crime of arson is directed to the property, the existence of inhabitants is one element in fixing the degree of arson. If the State wishes to prosecute a defendant in connection with an arson in which the defendant intended to harm, or actually did harm, multiple victims in a single fire, only one charge of arson is permissible. Other charges may be appropriate for multiple crimes of harm to persons such as attempted murder ... or murder, depending on the facts.

FN18. *Id.*

FN19. *Id.* at 943.

FN20. *Id.*

[6] In contrast to arson, the language of the robbery statute demonstrates that robbery is primarily a crime of physical violence against a person. Although robbery involves the taking of property, the legislature's concern in enacting the robbery statute was with violence and intimidation. Even second degree robbery is defined by the use or threat of force against a victim.$\frac{FN21}{}$ The severity of the crime increases to first degree robbery when that threat or use of force carries a greater risk of actual harm to a victim because of the display of what appears to be a deadly weapon.$\frac{FN22}{}$

> FN21. *See* Del. Code Ann. tit. 11, § 831 (2001) ("A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person ...."). The General Assembly's definition of other crimes involving the taking of property, such as theft, without reference to the use or threat of force against a person further demonstrates robbery's focus on the violence and intimidation involved when a human victim is present during an unlawful taking of property. *Cf., e.g.,* Del. Code Ann. tit. 11, § 841(a) ("A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it.").
>
> FN22. *See* Del. Code Ann. tit. 11, § 832 (increasing robbery to a class B felony when the robber, among other things, (1) "Causes physical injury to any person who is not a participant in the crime"; (2) "Displays what appears to be a deadly weapon"; or (3) "Is armed with and uses or threatens the use of a dangerous instrument").

In *Le Compte v. State*,[FN23] this Court held that imposition of consecutive sentences for a defendant's convictions for first degree robbery and for possession of a firearm during the commission of a felony, where both charges related to the same conduct by the defendant, did not violate the Double Jeopardy Clause. The Court decided that the legislative purposes behind the two statutes differed and that the statutes addressed separate crimes for which the State was required to prove different elements. In the Court's view, the General Assembly enacted the weapons statute to attempt to deter the availability of a weapon during the commission of a serious crime, in order to decrease the danger to victims. That is, the statute attempts to address the increase in the *491 actual risk to victims.[FN24] The first degree robbery statute, on the other hand, targets the victims' experience of intimidation and violence: "The first degree robbery statute covers the interaction between the aggravating circumstances created by the defendant's conduct and the *perceptions of the victim.*"[FN25] Thus, the robbery statute seeks to address the personal well-being of the victim, rather than simply the protection of property.

> FN23. 516 A.2d 898 (Del.1986).

> FN24. *Id.* at 902.

> FN25. *Id.* at 903 (emphasis added).

[7] Cases involving violent crimes have held that a defendant may be convicted of more than one count of a crime if the defendant's acts are sufficiently separated in time and space. Courts also consider whether a defendant formed separate intents to commit the acts for which he was convicted. Washington's actions were separated by at least fifty or sixty feet, similar to the distance between the defendant's acts in *Wyant*, where the Court upheld a defendant's separate convictions for raping his victim on the first and second floors of a residence. Less than one minute elapsed between Washington's actions, so the timing factor does not give great weight to the conclusion that the acts were distinct.[FN26] The evidence indicates, however, that

Washington formed separate intents to take Miller's car keys and Miller's silver chain. Even if we discount the temporal factor, the spatial and intent factors together support the separate convictions. Washington's conviction for two counts of first degree robbery was therefore proper and did not infringe his double jeopardy protection.

> FN26. *But cf. Gregory v. State,* No. 278,2000, 782 A.2d 264, 2001 WL 874766, 2001 Del. Lexis 316 (Del. July 25, 2001) (ORDER). In *Gregory,* the defendant was convicted, among other things, of assault and attempted murder. The defendant hit his victim in the head with a baseball bat, demanding return of some of defendant's property that he suspected the victim had stolen. When the victim asserted that she had not taken the property, the defendant shot her in the head and neck. The defendant argued that "his continuous course of conduct, spanning only a few minutes, constituted one offense and that his assault conviction should have been merged into the attempted murder conviction." *Id.* at *1, 2001 Del. Lexis 316, at *2-3. The Court rejected this argument:
> Gregory beat [the victim] with a baseball bat while demanding that she return his drugs and money. When that approach did not work, Gregory put down the bat and put a gun to [the victim's] head and shot her. Gregory engaged in two distinct acts and the short time span between those acts does not change the fact that they were different acts punishable as separate offenses. *Id.* at *1, 2001 Del. Lexis 316 at *3.

[8] Washington contended that his convictions were multiplicitous because they related to a single course of criminal conduct. Washington raised this issue in a post-trial motion that asserted his double jeopardy rights. In deciding that issue, this Court and the trial judge had to consider whether there are facts in the record that would support independent convictions by a rational jury. The inquiry is similar to the analysis used by this Court and trial judges

in considering whether to allow a jury to consider multiple counts of unlawful sexual conduct or multiple counts of crimes that involve restraint. [FN27] The better practice is for defense counsel to raise such contentions in a motion before the case is submitted to the jury. If the trial judge makes an independent determination that sufficient evidence has been submitted to support separate convictions, defense counsel can ask for a jury instruction **\*492** on those factual issues or the trial judge may sua sponte decide to give such an instruction. [FN28]

> FN27. *E.g., Feddiman v. State,* 558 A.2d 278, 287-89 (Del.1989); *Weber v. State,* 547 A.2d 948, 959 (Del.1988).

> FN28. *Feddiman,* 558 A.2d at 290; *Weber,* 547 A.2d at 959.

### *Firearm Possession*

[9] Washington's conviction for two counts of possession of a firearm during commission of a felony was also proper. If Washington properly could be convicted of two counts of robbery, then two distinct felonies occurred, during each of which Washington possessed a firearm. We therefore uphold those convictions as well.

### *Conclusion*

Accordingly, the judgment of the Superior Court is **AFFIRMED**.

Del.Supr.,2003.
Washington v. State
836 A.2d 485

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

347 F.Supp. 115
347 F.Supp. 115
(Cite as: 347 F.Supp. 115)

**SHU LAW LIBRARY**

Page 1

C
United States ex rel. England v. Anderson
D.C.Del., 1972.

United States District Court,D. Delaware.
UNITED STATES of America ex rel. Vestle L.
ENGLAND, Jr., Petitioner,
v.
Raymond W. ANDERSON, Warden Delaware Correctional Center, Respondent.
**No. 169.**

Aug. 18, 1972.

Habeas corpus proceeding was instituted by a state prisoner. The District Court, Latchum, J., held that the contention that the statute authorizing the sentence imposed upon the state prisoner embraced subjects not expressed in its title, contrary to a Delaware constitutional provision, was a purely state matter governed exclusively by a particular provision of the Delaware Constitution, and the District Court had no jurisdiction to determine such matter. The court also held that the Delaware statute providing punishment for possession of a firearm during commission of a felony and providing for a nonsuspendable minimum mandatory sentence of five years' imprisonment and also making the person convicted thereunder ineligible for probation or parole during the first five years of his sentence does not violate the Eighth Amendment proscription against cruel and unusual punishment, and that the statute is not violative of notice requirements of the due process clause of the Fourteenth Amendment though no definition of "possession" is included in the statute.

Petition dismissed and writ denied.
West Headnotes
**[1] Habeas Corpus 197 ⬤⟶351**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)3 Partial Exhaustion

197k351 k. In General; Mixed Petitions. Most Cited Cases
(Formerly 197k45.3(1.50), 197k45.3(1))
Though habeas corpus petitioner had not exhausted his state remedies on all claims raised in federal district court, district court, to avoid delay and piecemeal consideration of his contentions would consider all of his claims. 28 U.S.C.A. § 2254; Superior Court Rules, Criminal rule 35(a), Del.C.Ann.

**[2] Habeas Corpus 197 ⬤⟶464**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k463 Authority for Detention Under Statute or Ordinance
                197k464 k. Validity of Statute or Ordinance. Most Cited Cases
(Formerly 197k45.2(8), 197k45.2(4))
Contention that statute authorizing sentence imposed upon state prisoner embraced subjects not expressed in its title, contrary to Delaware constitutional provision, was purely state matter governed exclusively by particular provision of Delaware Constitution, and federal district court in habeas corpus proceeding had no jurisdiction to determine such matter. Del.C.Ann.Const. art. 2, § 16; 11 Del.C. §§ 468A, 468A(a), 4301, 4346; 28 U.S.C.A. § 2254.

**[3] Bail 49 ⬤⟶42**

49 Bail
    49II In Criminal Prosecutions
        49k41 Right to Release on Bail
            49k42 k. In General. Most Cited Cases
Eighth Amendment of Federal Constitution does not provide absolute right to bail either prior to conviction or pending appeal. U.S.C.A.Const. Amend. 8; 11 Del.C. § 2112.

**[4] Constitutional Law 92 ⬤⟶4549**

92 Constitutional Law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92XXVII Due Process
    92XXVII(H) Criminal Law
        92XXVII(H)3 Law Enforcement
            92k4547 Release
                92k4549 k. Bail. Most Cited Cases
(Formerly 92k262)

When bail is authorized by state statute, even
though it is not right guaranteed by Federal Consti-
tution, arbitrary denial of bail violates due process
under Fourteenth Amendment. U.S.C.A.Const.
Amends. 8, 14; 11 Del.C. § 2112.

**[5] Bail 49 €══49(1)**

49 Bail
    49II In Criminal Prosecutions
        49k49 Proceedings to Admit to Bail
            49k49(1) k. In General. Most Cited Cases
(Formerly 49k49)

Power to set or deny bail must be exercised ration-
ally, reasonably and without discrimination.
U.S.C.A.Const. Amends. 8, 14; 11 Del.C. § 2112.

**[6] Bail 49 €══63.1**

49 Bail
    49II In Criminal Prosecutions
        49k63 Bond, Undertaking, or Recognizance
on Appeal or Other Proceeding for Review
            49k63.1 k. In General. Most Cited Cases
(Formerly 49k63)

Under Delaware statute providing that, after con-
viction, court may order that original bail stand as
bail pending appeal or deny, increase or reduce
bail, bail is matter of judicial discretion after con-
sideration of all pertinent circumstances. 11 Del.C.
§ 2112.

**[7] Habeas Corpus 197 €══469**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for
Detention in General
            197k469 k. Bail. Most Cited Cases
(Formerly 197k45.2(1))

Federal court should not substitute its judgment for
that of a state court on question of bail unless it

clearly appears that state court's action is wholly
beyond range within which judgments could ration-
ally differ in relation to apparent facts of particular
situation. 11 Del.C. § 2112; U.S.C.A.Const.
Amends. 8, 14.

**[8] Bail 49 €══42**

49 Bail
    49II In Criminal Prosecutions
        49k41 Right to Release on Bail
            49k42 k. In General. Most Cited Cases

**Constitutional Law 92 €══4549**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4547 Release
                    92k4549 k. Bail. Most Cited Cases
(Formerly 92k262)

Where, when bail was requested on "gun posses-
sion" conviction, petitioner was lawfully serving
two-year sentence of imprisonment on burglary
conviction which he had not appealed, Delaware
Superior Court's judgment denying bail was not ar-
bitrary or violative of due process. 11 Del.C. §§
105, 395, 468A, 2112; U.S.C.A.Const. Amends. 8,
14.

**[9] Sentencing and Punishment 350H €══1506**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in Gen-
eral
        350HVII(E) Excessiveness and Proportional-
ity of Sentence
            350Hk1506 k. Weapons and Explosives.
Most Cited Cases
(Formerly 110k1213.2(1), 110k1213)

Delaware statute providing punishment for posses-
sion of firearm during commission of felony and
providing for nonsuspendible minimum mandatory
sentence of five years' imprisonment and also mak-
ing person convicted thereunder ineligible for pro-
bation or parole during first five years of his sen-
tence does not violate Eighth Amendment proscrip-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion against cruel and unusual punishment. 11 Del.C. §§ 468A, 468A(a); U.S.C.A.Const. Amend. 8.

**[10] Constitutional Law 92 €══4509(25)**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(H) Criminal Law
      92XXVII(H)2 Nature and Elements of Crime
        92k4502 Creation and Definition of Offense
        92k4509 Particular Offenses
          92k4509(25) k. Weapons and Explosives. Most Cited Cases
(Formerly 92k258(3.1), 92k258(3), 92k258)

**Weapons 406 €══3**

406 Weapons
  406k3 k. Constitutional, Statutory, and Local Regulations. Most Cited Cases
Word "possession" in context of Delaware statute defining offense of possession of firearm during commission of felony is common term used in everyday conversation and has acquired no artful meaning, and statute is not violative of notice requirements of due process clause of Fourteenth Amendment though no definition of "possession" is included in the statute. 11 Del.C. § 468A; U.S.C.A.Const. Amend. 14.

**\*117** Vestle L. England, Jr., pro se.

MEMORANDUM OPINION
LATCHUM, District Judge.

Vestle L. England, Jr., a state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was permitted to proceed *in forma pauperis.*

The facts relevant to his petition may be summarized as follows: The petitioner was indicted by the Grand Jury for New Castle County on August 31, 1971 for offenses allegedly committed on June 19, 1970. Counts I and III of the indictment charged him with burglary in the fourth degree in violation of 11 Del.C. § 395. Counts II and VII charged him

with conspiring with two co-defendants$^{FN1}$ to commit burglary in the fourth degree in violation of 11 Del.C. § 105 and Count V charged him with possession of a firearm during the commission of a felony in violation of 11 Del.C. § 468A(a). On October 7, 1971, the petitioner entered a plea of guilty to Count III charging burglary in the fourth degree and to Count V charging him with possession of a firearm during the commission of a felony. The Superior Court on January 8, 1971 sentenced him on the burglary charge to imprisonment for a term of two years beginning January 8, 1971 and ending January 7, 1973 and on the possession of a firearm count to imprisonment for a term of five years beginning January 8, 1971 and ending January 7, 1976.$^{FN2}$

> FN1. Co-defendants named in the indictment were Stephen Kenneth Adams and Robert Edward Hinderer.

> FN2. At sentencing, the Attorney General entered a *Nolle Prosequi* to the other counts of the indictment pertaining to the petitioner.

11 Del.C. § 468A, which defines the offense of possession of a firearm during the commission of a felony, provides for a nonsuspendable minimum mandatory sentence of five years imprisonment and also makes a person convicted thereunder ineligible for probation or parole during the first five years of his sentence.$^{FN3}$

> FN3. The maximum prison sentence which may be given under § 468A(a) is 30 years.

On June 21, 1971, the petitioner, pursuant to Superior Court Criminal Rule 35(a), moved to vacate his conviction and sentence on his plea of guilty to possession of a firearm during the commission of a felony. That motion was based on the contention that the title to the act was constitutionally defective under Art. II, § 16 of the Delaware Constitution, Del.C.Ann., in that it did not give sufficient notice that (a) the mandatory minimum sentence was five years, (b) that a person convicted thereunder would be ineligible for probation and parole, and (c) that,

with respect to this particular offense, it failed to disclose that the court's general discretionary sentencing power provided by 11 Del.C. § 4301 and the Department of Corrections' parole authority conferred by 11 Del.C. § 4346 had been modified and amended.

After briefing and argument, the Superior Court held on November 5, 1971 that 11 Del.C. § 468A was not invalid **\*118** under Art. II, § 16 of the Delaware Constitution. On December 9, 1971, the petitioner appealed that decision to the Delaware Supreme Court. While the appeal was pending, he moved the Superior Court for release on bail pending appeal of his conviction on the "possession of firearm" charge. On April 27, 1972, the Superior Court refused bail on the "possession" conviction since he was serving an unappealed concurrent sentence on the burglary conviction. On June 12, 1972, the Delaware Supreme Court dismissed the petitioner's appeal because it had not been filed within 30 days after the entry of the judgment appealed from, as required by 58 Del.Laws, Ch.22 and Delaware Supreme Court Rule 23.

[1] The petitioner continues to serve his state imposed sentences in respondent's custody at the Delaware Correctional Center. His present petition, alleging the exhaustion of available state remedies, advances four reasons for granting habeas corpus relief.[FN4]

> FN4. It is obvious from the record that the petitioner has not exhausted his state remedies on all the claims raised here. However, to avoid delay and piece-meal consideration of his contentions, the Court will consider all of petitioner's claims.

[2] First, the petitioner contends that 11 Del.C. § 468A is unconstitutional because the body of the act embraces subjects which are not expressed in its title contrary to Art. II, § 16 of the Delaware Constitution.[FN5] Whatever merits this contention may have, this Court is without jurisdiction to determine the issue. The question raised is purely a state matter governed exclusively by the particular provision

of the Delaware Constitution. It is a well-settled doctrine that federal habeas corpus relief is not available to a state prisoner unless a federal constitutional right has been violated.Collins v. Swenson, 443 F.2d 329, 331 (C.A. 8, 1971); Mathis v. People of the State of Colorado, 425 F.2d 1165 (C.A. 10, 1970). Since the petitioner clearly indicates that the right sought to be vindicated is a right arising under the Delaware Constitution and not one guaranteed by the United States Constitution, this Court is without jurisdiction to determine the matter.

> FN5.Art. II, § 16 of the Del.Const. provides: "No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

[3][4][5][6][7] Secondly, the petitioner contends that the Superior Court's refusal to release him on bail pending his appeal to the Delaware Supreme Court violated his federal constitutional right to bail. It is true that the Eighth Amendment[FN6] protects not only against setting excessive federal bail but also by necessary implication protects against the denial of bail.U. S. ex rel. Covington v. Coparo, 297 F.Supp. 203, 206 (S.D.N.Y.1969); Trimble v. Stone, 187 F.Supp. 483, 484 (D.D.C.1960). While the Supreme Court has not ruled directly on the imposition of the bail clause of the Eighth Amendment to the states through the Fourteenth Amendment, a number of lower federal courts have held that it is applicable.Mastrian v. Hedman, 326 F.2d 708, 710-711 (C.A.8, 1964), cert. den.376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); United States ex rel. Hyde v. McMann, 263 F.2d 940, 943 (C.A.2, 1959), cert. den.360 U.S. 937, 79 S.Ct. 1462, 3 L.Ed.2d 1549 (1959); Wansley v. Wilkerson, 263 F.Supp. 54, 57 (W.D.Va.1967). The Eighth Amendment, however, does not provide an absolute right to bail. Prior to conviction, bail may be denied if there is reason to believe that the defendant will not appear.Mastrian v. Hedman, supra;Dameron v. Harson, 255 F.Supp. 533, 536-537 (W.D.La.1966), aff'd364 F.2d 991 (C.A.5, 1966); Corbett v. Patterson, 272 F.Supp. 602

(D.Colo.1967). Similarly, after conviction, state prisoners do not have an absolute federal constitutional right to bail **\*119** pending appeal of the conviction.Bloss v. Michigan, 421 F.2d 903, 905 (C.A.6, 1970); Sellers v. Georgia, 374 F.2d 84 (C.A.5, 1967); United States ex rel. Siegal v. Follette, 290 F.Supp. 632, 635 (S.D.N.Y.1968). When, however, bail is authorized by a state statute, even though it is not a right guaranteed by the federal constitution, the arbitrary denial of bail violates due process under the Fourteenth Amendment. United States ex rel. Keating v. Bensinger, 322 F.Supp. 784, 786 (N.D.Ill.1971). The power to set or deny bail must be exercised rationally, reasonably and without discrimination.United States ex rel. Covington v. Coparo, *supra,* 297 F.Supp. 203, at 206. Delaware provides that "[a]fter conviction, the court may order that the original bail stand as bail pending appeal or deny, increase or reduce bail."11 Del.C. § 2112. This is a matter of judicial discretion after considering all the pertinent circumstances. A federal court should not substitute its judgment for that of a state court on the question of bail unless it clearly appears that the state court's action is wholly beyond the range within which judgments could rationally differ in relation to the apparent facts of the particular situation.Simon v. Woodson, 454 F.2d 161, 165 (C.A.5, 1972).

> FN6."Excessive bail shall not be required ...."U.S.Const., Amend. VIII.

[8] Applying these principles to the facts of this case it is clear that the Superior Court's denial of bail pending appeal of the "gun possession" conviction was not arbitrary or unreasonable. At the time bail was requested the petitioner was lawfully serving a two year sentence of imprisonment on the burglary conviction which he had not appealed. It cannot be held under these circumstances that the Superior Court's judgment was arbitrary. Accordingly, this Court finds no merit to petitioner's second ground for habeas corpus relief.

[9] Thirdly, the petitioner claims that the provisions of 11 Del.C. § 468A which provide for a mandatory minimum five year sentence and a prohibition against granting probation, parole and suspension of sentence amounts to cruel and unusual punishment proscribed by the Eighth Amendment made applicable to the states by the Fourteenth Amendment.Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Court finds no merit to this contention. It is well-settled that such penalties as provided by § 468A do not violate the Eighth Amendment.United States v. Williams, 143 U.S.App.D.C. 16, 442 F.2d 738, 741-742 (1970); United States ex rel. Darrah v. Brierley, 415 F.2d 9, 13 (C.A.3, 1969); Stewart v. United States, 325 F.2d 745 (C.A.8, 1964), cert. den.377 U.S. 937, 84 S.Ct. 1344, 12 L.Ed.2d 301 (1964); Gallego v. United States, 276 F.2d 914, 918 (C.A.9, 1960); Lathem v. United States, 259 F.2d 393, 397 (C.A.5, 1958). What constitutes a fair and adequate penalty for a particular crime is, in the first instance, "a matter of legislative judgment and discretion and the courts will not ordinarily interfere therewith unless the penalty prescribed is clearly and manifestly cruel and unusual punishment."Lewis v. State of Oklahoma, 304 F.Supp. 116, 122 (W.D.Okl.1969). Probation and parole are matters of legislative grace and it is within the legislative power to withhold that which it could grant. This Court is unable to conclude that the penalties provided for possessing a gun during the commission of a felony are so severe and unusual as to be violative of due process.

[10] Finally, the petitioner contends that since the word "possession" is not defined in 11 Del.C. § 468A(a), the statute fails to convey to a person of ordinary intelligence what is forbidden, and is therefore void under the notice requirements of the Due Process Clause of the Fourteenth Amendment. The statute reads:

"§ 468A*Possession of a deadly firearm during commission of a felony*

(a) Any person found to have had in his possession during the commission of a felony within this State any shotgun, rifle, pistol, revolver, zip gun, or **\*120** other firearm or weapon capable of firing a missile or projectile with sufficient force to cause death or serious bodily injury shall be guilty of a felony and shall be imprisoned not less than 5 years nor more

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

than 30 years and fined as the court in its discretion may prescribe."

The word "possession" appearing in the context of the above statute is "a common term used in every day conversation that has not acquired any artful meaning."Kramer v. United States, 408 F.2d 837, 840 (C.A.8, 1969). It has been long and widely recognized that possession may be actual or constructive. Thus, a person who knowingly has direct physical control of a thing at a given time is said to be in actual possession. In addition, a person, even though not in actual possession, who knowingly has both the power and intention at a given time to exercise dominion and control over a thing, either directly or through another, is said to have constructive possession.Arellanes v. United States, 302 F.2d 603, 606 (C.A.9, 1962), cert. den.371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962); United States v. Santore, 290 F.2d 51, 60 (C.A.2, 1960), cert. den.365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961).

Under no stretch of the imagination can it be said that the word "possession", in the context in which it is used in the statute, is so indefinite and vague that a person of ordinary intelligence would not be put on fair notice of the offending conduct. Particularly is this so in the instant case. Here the petitioner knowingly and voluntarily entered a plea of guilty to Count V of the indictment. That count charged him with feloniously having in his possession a .38 caliber revolver, capable of firing a projectile with sufficient force to cause serious bodily injury, during the commission of a felony, namely burglary fourth degree, by feloniously breaking and entering the premises of the Specialty Converters, Inc., located at the Delaware Industrial Park, Newark, Delaware, with the intent to commit a crime therein, namely burglary fourth degree of the Remo-Ware Inc. warehouse. The Court therefore rejects petitioner's fourth contention.

There is no probable cause for an appeal.Fitzsimmons v. Yeager, 391 F.2d 849, 854 (C.A.3, 1968).

D.C.Del., 1972.

U. S. ex rel. England v. Anderson
347 F.Supp. 115

END OF DOCUMENT

**C**
STATE v. TRABBOLD
Del.Super. 1952

Superior Court of Delaware, New Castle County.
STATE
v.
TRABBOLD.
Sept. 23, 1952.

Defendant was found guilty in Superior Court, New Castle County, Richards, P. J., of extortion, and he filed motion for new trial. The Superior Court, New Castle County, Richards, P. J., held that defendant who made no objection to fact that he had not been arraigned, but proceeded with trial, appeared as a witness and denied charge against him, had ample opportunity to deny charge and defend himself, and impliedly waived arraignment.

Motion refused.
West Headnotes
**[1] Criminal Law 110 €═261(1)**

110 Criminal Law
    110XIV Arraignment
        110k261 Necessity of Arraignment and Plea
            110k261(1) k. In General. Most Cited Cases

An arraignment is essential to the conviction of a felony unless waived by accused.

**[2] Criminal Law 110 €═262**

110 Criminal Law
    110XIV Arraignment
        110k262 k. Waiver of Arraignment and Plea. Most Cited Cases

In prosecution for misdemeanor, accused who made no objection to fact that he had not been arraigned, but proceeded with trial, appeared as witness and denied charge against him, had ample opportunity to deny charge and defend himself, and impliedly waived arraignment.

**[3] Extortion and Threats 165 €═15**

165 Extortion and Threats
    165I Official Extortion
        165k15 k. Evidence. Most Cited Cases

In prosecution for extortion, evidence sustained finding that defendant constable, while acting in an official capacity, demanded and received from the prosecuting witness a fee not authorized by law. Rev.Code 1935, § 5384.

**\*\*538 \*391** The indictment charged the defendant with extortion in violation of paragraph 5384 of the Code of 1935.

Tried before Richards, P. J., without a jury.

The defendant was found guilty and the pending motion for a new trial was duly made.

Louis J. Finger, Deputy Atty. Gen., for the State.
David B. Coxer Jr., Wilmington, for defendant.
RICHARDS, President Judge.

The defendant relies upon two grounds in his reasons filed for a new trial; the first ground being, that he was never arraigned and consequently the trial was invalid. The second ground relied upon is, that the State failed to prove that the defendant was acting in an official capacity within the terms of the statute in question at the time he performed the services upon which the charge of extortion is based.

**\*392** It is admitted that the defendant was never arraigned, but he appeared as a witness in his defense, was sworn, denied the charge against him and testified as to the transaction which the State contends supports the charge for which he was indicted.

In support of his first contention the defendant relies upon the case of State v. Barr, decided by this Court in 1909 and reported in 7 Pennerwill 340, 79 A. 730. In that case the defendant was charged in the information with a violation of Section 7 of Article 5 of the Constitution, tried and convicted. The Court in granting a new trial because it appeared that the defendant was never arraigned had this to say: 'We are of the opinion that that was absolutely

essential, that there could be no valid trial except upon an issue joined, and there was no issue joined in the way the law requires'. The report of the case does not show that the defendant was called to testify in his defense, or that he ever personally denied the charges which the witnesses for the State made against him. The only mention which said report makes of the defense is found in the following language: 'The defense consisted of a general denial of the State's testimony, and evidence was introduced tending to impeach said testimony'. An examination of the minutes of the trial kept by the Clerk of the Court fails to show that the defendant testified during the trial. Court Record, 1876, Sussex County, page 674. This record is in office of the Clerk of the Peace at Georgetown, Sussex County.

The distinction between the Barr case, supra, and the case now being considered is readily seen. As far as I have been able to learn from the report and record of the case, Barr never denied the charges against him or testified concerning what happened. In the present case, the defendant, Trabbold, denied the charge against him under oath on the witness stand and testified as to his version of what happened during the transaction in question. He had as full an opportunity to deny the charge as he would have had if he had been arraigned, and his right to appear in his own defense and be heard was not denied.

\*393 The purpose of an arraignment of one charged with a criminal offense is to establish the identity of the accused, inform him of the charge against him and give him an opportunity to plead 14 American Jurisprudence, Page 934.

[1] It is held to be essential to the conviction of a felony unless waived by the accused.

Parkinson v. People, 135 Ill. 401, 25 N.E. 764,10 L.R.A. 91;Burroughs v. State, 94 Neb. 519, 143 N.W. 450, Ann.Cas.1915C, 1070; Sperry v. Commonwealth, 9 Leigh, Va., 623, 33 Am.Dec. 261;State v. Drown, 85 Vt. 233, 81 A. 641;Commonwealth v. Hardy, 2 Mass. 302; 14 American Jurisprudence, P. 940.

There is a difference of authority on the question of whether an arraignment is necessary when one is prosecuted for a misdemeanor. The Supreme Court of the United States in the case of Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 959, 40 L.Ed. 1097, held that, 'due process of law requires that the accused plead, or be ordered to plead, or, in a proper case, that \*\*539 a plea of not guilty be filed for him, before his trial can rightfully proceed; and the record of his conviction should show distinctly, and not by inference merely, that every step involved in due process of law, and essential to a valid trial, was taken in the trial court'.

The principle was also recognized in, Douglas v. State, 3 Wis. 820;Grigg v. People, 31 Mich. 471;People v. Corbett, 28 Cal. 328;State v. Hughes, 1 Ala. 655;Sartorious v. State, 24 Miss. 602;Bowen v. State, 108 Ind. 411, 9 N.E. 378;Aylesworth v. People, 65 Ill. 301;Ray v. People, 6 Colo. 231;State v. Vanhook, 88 Mo. 105.

There undoubtedly was a period in English history when objections of this character were given much more weight, due to the fact that the accused was not allowed as great a latitude in defending himself, or entitled to as many privileges as he has today.

\*394 This rule, which has been spoken of as the ancient rule, is looked upon as too severe by modern authorities and there has been a tendency for some time to make it less rigorous in the lesser grades of felonies and misdemeanors.

The Supreme Court of the United States in Garland v. State of Washington, 232 U.S. 642, 34 S.Ct. 456, 457, 58 L.Ed. 772, overruling Crain v. United States, supra, made this comment: 'A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review'. That the courts are entertaining this view today is shown by the following cases: Ingham v. State, 35 Ohio App. 311, 172 N.E. 401;State v. Forner, 75 Kan. 423, 89 P.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dutton v. State. 123 Md. 373,97 A. 417;Frank v. State. 142 Ga. 741, 83 S.E. 645. L.R.A.1915D. 817;State v. O'Kelley. 258 Mo. 345, 167 S.W. 980, 52 L.R.A.,N.S., 1063; People v. Bradner. 107 N.Y. 1, 13 N.E. 87;Hack v. State. 141 Wis. 346, 124 N.W. 492, 45 L.R.A., N.S., 664.

[2] The record in this ease not only clearly shows that the defendant had ample opportunity to deny the charge against him and defend himself, but having made no objection to the fact that he had not been arraigned, agreeing to proceed with the trial, appearing as a witness and denying the charge against him under oath, there is an implied waiver of the failure by the State to have him arraigned.

I cannot follow the ruling of this Court in the case of State v. Barr above referred to.

The second ground relied upon for a new trial, namely, that the State failed to prove that the defendant was acting in an official capacity within the terms of the statute upon which the indictment is based, requires a consideration of said statute and the evidence adduced at the trial.

*395 Paragraph 5384 of the Code of 1935, which is the statute involved in this case, provides: 'If any officer shall demand and receive for any official duty, or service, a fee not allowed by law, or a greater fee than is allowed by law, or shall demand and receive a fee for such duty, or service, before the same shall have been actually performed, except where otherwise expressly provided, unless such fee be voluntarily tendered, the person so offending shall be guilty of a misdemeanor'.

It was brought out at the trial that Douglas King, of Philadelphia, came to Wilmington and went to the office of Magistrate Lemon to arrange for the collection of a check of Harvey Taylor, for $245, who lived in or near Cheswold, in Kent County. King was received at the office of Magistrate Lemon by one Ivey Sharp, who acted as secretary of the Magistrate, who took the check, told him it would be attended to and would cost him $40. After King made his complaint in the office of the Magistrate, Sharp filled out a warrant or paper of some charac-

ter which he gave to defendant, a constable who served process issued by Magistrate Lemon. At the time Sharp gave said warrant or paper to the defendant he also gave him the check of Harvey Taylor, for $245, and told him that King wanted it collected. The defendant took the warrant or paper and **540 check handed him by Sharp at the Magistrate's office, as was his custom in his official capacity as constable, to take warrants issued by Magistrate Lemon and after going to Cheswold on two different occasions collected the full amount of $245.

Subsequently, King came to the Magistrate's office about 6:30 in the evening and found the defendant there. When King asked him if he had colleeted the amount due on the Taylor check, the defendant replied that he had $245 for him. King then asked him what he owed him to which defendant replied $95. A discussion then took place between King and the defendant as to the amount to be paid him for his services, during which King offered him $35, $45, $55, and finally $65 which the defendant agreed to take. The defendant gave King the entire *396 amount of $245 who counted out $65 and gave it to him in payment of the amount which he agreed to accept for his services.

It is admitted that the defendant was a constable at the time he performed the service for King, but denied that he was acting in an official capacity. It is not charged that legal proceedings were started to eollect the amount due on the Taylor check, but the indictment does charge that the defendant committed certain acts 'while colleeting for one Douglas King a debt due the said Douglas King pursuant to a complaint filed in the office of Francis Q. Lemon, a Justice of the Peace * * *'.

[3] The defendant's contention that the statute fixes the fee for the official acts of a constable is correct, but certainly a constable can perform an act of an official nature for which no fee is provided. The statute which is the basis of the indictment, was intended to apply to just such cases as this, where an officer performs an aet in his official capacity and receives a fee therefor not allowed by law. The de-

fendant first learned about the matter at the office of Magistrate Lemon, he received the warrant and Taylor check at the office of the Magistrate from the Magistrate's Secretary, with instructions to collect the amount due on the check. I am convinced from the testimony before me, that the defendant undertook the collection of the Taylor check in his official capacity as a constable, that he went to Cheswold and collected the amount due on said check in his official capacity as a constable and made the settlement with King in office of the Magistrate, where he first became connected with the transaction, in his official capacity as a constable.

The fact that King negotiated with the defendant about his fee offering him $35, $45, $55 and finally $65 which the defendant agreed to accept, shows that he considered the fee exorbitant and not authorized by law. For the same reason it appears that the defendant looked upon the fee which he received as not being authorized by law, otherwise he would not have negotiated with King but told him the legal fee.

**\*397** The argument that it it necessary for the State to prove the tendering or handing over, by King to the defendant, of a sum of money or some other item of value, is not convincing.

Prosecutions of this character, under statutes like the one involved in this case, must be determined upon the evidence produced at the trial. The authorities are not helpful.

I am convinced from the testimony before me, that the defendant, while acting in an official capacity, demanded and received from the prosecuting witness King, a fee not authorized by law.

The motion for a new trial is refused.

Del.Super. 1952
State v. Trabbold
8 Terry 391, 47 Del. 391, 91 A.2d 537

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FILED
CLERK, DISTRICT COURT
DISTRICT OF DELAWARE

2008 MAR 28  PM 4:40



J. Stephenson )
The Herman Halloway Psy Center
R01 N Dupont Hwy
Newcastle, DE 19720
SBM

Clerk
U.S. District Court
Lockbox 18
844 N King St
Wilmington DE, 19801